IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**THOMAS E. HOBGOOD, JR.,**

    Plaintiff,

v.                                                                     Civil Action No. **3:23CV554**

**MISS JARRETT,**

    Defendant.

**MEMORANDUM OPINION**

Thomas E. Hobgood, a former inmate, brings this action pursuant to 42 U.S.C. § 1983 in which he contends that Nurse Jamie Jarrett[1] denied him adequate medical care for a hernia during his incarceration at the Meherrin River Regional Jail ("Merherrin").[2] The matter is before the Court on Hobgood's Particularized Complaint (ECF No. 31), and the Renewed Motion for Summary Judgment filed by Nurse Jarrett (ECF No. 48). Both Nurse Jarrett and the Court provided Hobgood with notice pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975). (ECF No. 48, at 1–2; ECF No. 50.) Hobgood submitted a letter that the Court construes as a response to the Renewed Motion for Summary Judgment. (ECF No. 52.) Because Hobgood fails to demonstrate that Nurse Jarrett provided him with inadequate medical care, the Renewed Motion for Summary Judgment will be GRANTED.

---

[1] In her Motion for Summary Judgment, Nurse Jarrett provides the correct spelling of her name, which the Court employs. (ECF No. 48, at 1.) The Clerk is DIRECTED to update the docket to the spelling in the caption above.

[2] The Court employs the pagination assigned by the CM/ECF docketing system. The Court also corrects the spelling, capitalization, and punctuation in the quotations from the parties' submissions. The Court corrects the spelling of Nurse Jarrett's in the quotations from the Court's prior orders.

## I.    PROCEDURAL HISTORY AND CLAIM

By Memorandum Order entered on December 13, 2023, the Court directed Hobgood to file a particularized complaint and provided very specific instructions. (ECF No. 13.) In response, Hobgood filed eleven separate complaints against eleven individual defendants. (ECF Nos. 15–25.) By Memorandum Order entered on February 16, 2024, the Court explained that Hobgood had not complied with the directions provided in the December 13, 2023 Memorandum Order. The Court noted:

> Plaintiff may not file separate complaints against different defendants in this one civil action. If Plaintiff would like to proceed with each of the eleven complaints as filed, the Court will docket each as a new, separate civil action.[3] Plaintiff will be responsible for the full filing fee of $350.00 for **each** of the ten new actions. In the alternative, if Plaintiff would like to proceed with one civil action, he must file **one** particularized complaint that raises all claims against all defendants. Plaintiff must comply with the directions provided in the December 13, 2023 Memorandum Order.
> 
> Accordingly, within thirty (30) days of the date of entry hereof Plaintiff must either notify the Court of his desire to proceed with each of the eleven complaints as separate civil actions or file one particularized complaint that follows the directions in the December 13, 2023 Memorandum Order. If Plaintiff fails to comply with the following, the Court will dismiss the action without prejudice. *See* Fed. R. Civ. P. 41(b).

(ECF No. 28, at 1–2.) On March 25, 2024, Hobgood filed his Particularized Complaint against Nurse Jarrett. (ECF No. 31.) In his Particularized Complaint, Hobgood raises the following claim for relief:

Claim One:   On July 30, 2023, Nurse Jarrett denied Hobgood adequate medical care for his hernia which resulted in "extreme and continuous pain." (*Id.* at 4.)

Hobgood requests declaratory and injunctive relief and monetary damages. (*Id.* at 5–6.)

---

[3] The first complaint against Jarrett will be the only complaint remaining in this case. (ECF No. 15.) The other ten complaints will each be opened as new civil action.

2

The Court directed service of the Particularized Complaint on Nurse Jarrett, and, on June 21, 2024, she filed a Motion for Summary Judgment. (ECF No. 39.) The Court provided Hobgood with notice pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), (ECF No. 41), and on October 4, 2024, Hobgood filed yet another Complaint, (ECF No. 43).[4] By Memorandum Order entered on October 21, 2024, the Court explained as follows:

> In his Particularized Complaint, Hobgood alleges that Miss Jarrett's actions violated the Eighth Amendment. Miss Jarrett also addresses Hobgood's claim as one brought under the Eighth Amendment in the Motion for Summary Judgment. At the time that Hobgood filed his complaint, however, he was housed in the Meherrin River Regional Jail, not in the Virginia Department of Corrections. From Hobgood's submissions, it is unclear whether he was a convicted felon at the time of his complaints or a pretrial detainee. Nevertheless, because Hobgood was housed in the Meherrin River Regional Jail at the time of his complaints, it is likely that Hobgood was a pretrial detainee, and the Fourteenth Amendment would apply. Miss Jarrett has, therefore, provided the Court with an incorrect analysis.[5] *See Short v. Hartman*, 87 F.4th 593, 611 (4th Cir. 2023); *see also Jenkins v. Woodward*, 109 F.4th 242, 250 n.3 (4th Cir. 2024) (explaining that "unlike post-conviction detainees, pre-trial detainees are not required to show that they were subjected to cruel and unusual punishment to show a constitutional violation").
> Given the inadequacy of the current briefing, the Motion for Summary Judgment, (ECF No. 39), is DENIED WITHOUT PREJUDICE.[6] Within thirty (30) days of the date of entry hereof, Miss Jarrrett shall refile her Motion for Summary Judgment addressing Hobgood's claim under the correct constitutional standard.

(ECF No. 45, at 1–2.) Nurse Jarrett has filed a Renewed Motion for Summary Judgment, (ECF No. 48), and the matter is ripe for disposition. Nurse Jarrett explains that Hobgood had been

---

[4] Hobgood did not seek leave to file an amended complaint as he must at this late juncture. The operative complaint, therefore, remains the Particularized Complaint (ECF No. 31).

[5] Of course, if Hobgood was a convicted felon at the time, despite where he was housed, the Eighth Amendment would apply. At this juncture, however, it appears that Hobgood was a detainee, and Miss Jarrett does not provide evidence to the contrary.

[6] In reaching this conclusion, the Court also considers the general rule that a party shall not file separate motions for summary judgment. *See* E.D. Va. Loc. Civ. R. 56(C) ("Unless permitted by leave of Court, a party shall not file separate motions for summary judgment addressing separate grounds for summary judgment.").

3

convicted of a misdemeanor and was serving his sentence at the time of his complaints and was therefore a convicted prisoner.

## II. STANDARD FOR SUMMARY JUDGMENT

In addition to the standards for summary judgment identified above for the moving party, "where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)).

In reviewing a summary judgment motion, the court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). A mere scintilla of evidence, however, will not preclude summary judgment. *Anderson*, 477 U.S. at 251 (citing *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448 (1872)). "[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the onus of proof is imposed." *Id.* (quoting *Munson*, 81 U.S. at 448). Additionally, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992)); *see* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials.").

In support of her Motion for Summary Judgment, Nurse Jarrett submits hundreds of pages of medical records, (ECF No. 49-1 through 49-6), various criminal records of Hobgood, (ECF No. 49-7), and her own declaration, (ECF No. 49-8).

At this stage, the Court is tasked with assessing whether Hobgood "has proffered sufficient proof, *in the form of admissible evidence*, that could carry the burden of proof of his claim at trial." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993) (emphasis added). As a general rule, a non-movant must respond to a motion for summary judgment with affidavits or other verified evidence. *Celotex Corp.*, 477 U.S. at 324. The facts offered by an affidavit or sworn declaration must be in the form of admissible evidence. *See* Fed. R. Civ. P. 56(c)(4). The sworn statement "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." *Id.* Finally, because they must be in the form of admissible evidence, "summary judgment affidavits cannot be conclusory or based upon hearsay." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996) (internal citations omitted). The absence of an "affirmative showing of personal knowledge of specific facts" prevents the consideration of such facts in conducting a summary judgment analysis. *EEOC v. Clay Printing Co.*, 955 F.2d 936, 945 n.9 (4th Cir. 1992) (citation omitted) (internal quotation marks omitted).

Hobgood filed an unsworn response, and his Particularized Complaint is not sworn to under penalty of perjury.[7] Hobgood's failure to present any evidence to counter Nurse Jarrett's Renewed

---

[7] Hobgood provided a "Verification" wherein he stated: "I have read the foregoing complaint and hereby verify that the matters are alleged therein are true except as to matters alleged on information and belief, and as to those, I believe them to be true. I certify under penalty of perjury that the foregoing is true and correct." (ECF No. 31, at 7.) Such a statement fails to transform the allegations in the Particularized Complaint into admissible evidence. *Hogge v. Stephens*, No. 3:09cv582, 2011 WL 2161100, at *2–3 & n.5 (E.D. Va. June 1, 2011) (treating statements sworn to under penalty of perjury but made upon information and belief as "mere

Motion for Summary Judgment permits the Court to rely solely on her submissions in deciding the Motion for Summary Judgment. *See Forsyth*, 19 F.3d at 1537; Fed. R. Civ. P. 56(c)(3) ("The Court need only consider the cited materials.").

In light of the foregoing submissions and principles, the following facts are established for the Motion for Summary Judgment. All permissible inferences are drawn in favor of Hobgood.

### III. UNDISPUTED FACTS

#### A. Hobgood Was a Convicted Prisoner

Hobgood's complaints against Nurse Jarrett stem from his medical concerns on July 29 and July 30, 2023. (ECF No. 31, at 3.) At that time, Hobgood was serving an active sentence of imprisonment for a petit larceny conviction in Chesterfield County. (*See* ECF No. 49-7, at 4.)

#### B. Nurse Jarrett's Interactions with Hobgood

Nurse Jarrett is the Health Services Administrator at Meherrin. (ECF No. 49-8 ¶ 1.) Although she performs administrative functions, she is registered nurse and regularly picks up nursing shifts as needed. (*Id.*) Hobgood had been under the care of medical staff at Meherrin for his umbilical hernia since his first complaints of it on February 12, 2023. (ECF No. 49-3, at 27.)[8] The hernia was small and reducible and had been monitored and imaged repeatedly to ensure there was no evidence of strangulation or other serious problems. (*See, e.g.*, ECF No. 49-1, at 24, 57, 59.) Hobgood had received an ultrasound of the hernia on June 2, 2023, which reflected the same. (*Id.* at 59.) As discussed below, Nurse Jarrett was not involved with Hobgood's medical care for his hernia until July 30, 2023.

---

pleading allegations" (quoting *Walker v. Tyler Cty. Comm'n*, 11 F. App'x 270, 274 (4th Cir. 2011))).

[8] Hobgood told medical providers that the umbilical hernia had developed four or five years before his incarceration at Meherrin as result of a gunshot wound he suffered at age fourteen, decades before. (ECF No. 49-2, at 89–90.)

6

Before July 30, 2023, Nurse Jarrett knows of two instances where she interacted with Hobgood in a clinical setting. (ECF No. 49-8 ¶ 4.) On April 17, 2023, Nurse Jarrett conducted a "'restricted housing check,' which is a brief visit by a nurse to any person held in restricted housing." (*Id.*) Nurse Jarrett spoke to Hobgood in his cell and asked him if he had any medical or mental health concerns or issues to discuss. Hobgood indicated that he had no concerns. (*Id.*) On April 18, 2023, Nurse Jarrett once again conducted a check in restricted housing and observed Hobgood lying on his bunk awake. She asked Hobgood if he had any medical or mental health issues or concerns to discuss, and he once again denied having any concerns. (*Id.* ¶ 5.)

On July 29, 2023, at 11:57 p.m., medical staff conducted a restrictive housing check, and Hobgood indicated that he was having problems with his hernia and wished to be seen by medical. (ECF No 49-4, at 33.) The nurse placed Hobgood on the sick call list. (*Id.*) On July 30, 2023, Nurse Jarrett was conducting sick call visits of inmates who requested to see a nurse. (ECF No. 49-8 ¶ 6.) Hobgood had requested a reassessment of his hernia, and Nurse Jarrett saw him during sick call that day. (*Id.*) During his appointment at 11:41 a.m., Hobgood reported that he had an umbilical hernia from a gunshot wound that happened before his arrival at Meherrin. (*Id.* ¶ 7; ECF No. 49-4, at 34.) Hobgood indicated that the hernia was "leaking pus and blood" and had grown since his incarceration, and he reported that his pain level was eight out of ten. (ECF No. 49-8 ¶ 7.) Nurse Jarrett

> examined Mr. Hobgood and found him to have an umbilical hernia, about the size of a golf ball, over a healed abdominal scar. [She] observed a reddened area at approximately nine to twelve o'clock on the hernia, but it was only visible when pushed gently toward the center of Mr. Hobgood's body. [She] observed no bleeding, drainage, or odor. [She] cleansed and dried the area for Mr. Hobgood.

7

(*Id.* ¶ 8.) Hobgood reported to Nurse Jarrett that the area itched and was tender, that the hernia shrunk in size when he was lying flat, and that he experienced "hyperactive bowel sounds with increased gas and straining during bowel movements." (*Id.* ¶ 9.)

After examining Hobgood, and based on her assessment, she placed Hobgood on the list of inmates to be seen by the doctor on his next visit to Meherrin "at the first available opportunity." (*Id.* ¶¶ 10, 14.) Nurse Jarrett also

> placed Mr. Hobgood on a low-sodium diet in light of his elevated blood pressure. [She] also placed him on the generalized aches and pains protocol, which included an order for 650mg of acetaminophen for five days as needed to assist with Mr. Hobgood's pain. [She] also placed Mr. Hobgood on the constipation protocol, which includes an order for a fiber tablet for thirty days.
> In addition, [Nurse Jarrett] provided education to Mr. Hobgood on stress reduction techniques including meditation and deep breathing, to assist with his high blood pressure. [She] provided education on good hygiene habits to assist Mr. Hobgood in keeping the area around his hernia clean and dry. [She] encouraged Mr. Hobgood to increase his water intake, to exercise daily by walking, and to seek further care if his pain persisted or his symptoms worsened.

(*Id.* ¶¶ 10–11.)

Hobgood was seen by the doctor two days later, on August 1, 2023. (*Id.* ¶ 12.) The doctor ordered additional labs and imaging for Hobgood's hernia. (*Id.*) Hobgood was under the doctor's care for months for the hernia, "which was ultimately surgically corrected on the physician's orders in February 2024, shortly before Mr. Hobgood was released from custody." (*Id.*)

After seeing Hobgood on July 30, 2023, at sick call, Nurse Jarrett only had one other clinical interaction with him. (*Id.* ¶ 13.)[9] On August 11, 2023, Nurse Jarrett conducted a restrictive housing check, observed Hobgood standing in his cell, and spoke with him. (*Id.*) When asked

---

[9] The only other involvement Nurse Jarrett had with Hobgood's care was that on August 9, 2023, Hobgood submitted a request to see his x-rays taken on August 8, 2023. (ECF No. 49-4, at 49.) Nurse Jarrett responded the same day with instructions on how Hobgood could obtain his medical records. (*Id.*)

8

whether he had any medical or mental health issues or concerns to discuss, Hobgood denied having any concerns. (*Id.*)

## IV. ANALYSIS

### A. Eighth Amendment Principles

Because Hobgood was a convicted prisoner serving an active term of incarceration, the Eighth Amendment applies to his claim of denial of adequate medical care. *See Short v. Hartman*, 87 F.4th 593, 606 (4th Cir. 2023); *Cooper v. Dyke*, 814 F.2d 941, 948 (4th Cir. 1987) (explaining that a "[s]tate does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt"); *cf. Ortiz v. Orleans County*, No 1:20–CV–01555–JLS–MJR, 2022 WL 1242486, at *8 (W.D.N.Y. Mar. 15, 2022) (explaining that an inmate's status changed from pretrial detainee to convicted prisoner at the time of guilty plea and conviction for misdemeanor). To survive summary judgment, an inmate must demonstrate (1) that objectively the deprivation suffered or harm inflicted "was 'sufficiently serious,' and (2) that subjectively the prison officials acted with a 'sufficiently culpable state of mind.'" *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). With respect to the denial of adequate medical care, "a prisoner must [demonstrate] acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A medical need is "serious" if it "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)).

The subjective prong requires the plaintiff to demonstrate that a particular defendant acted with deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate

indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. *Farmer* teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." *Quinones*, 145 F.3d at 168 (citing *Farmer*, 511 U.S. at 837); *see Rich v. Bruce*, 129 F.3d 336, 338 (4th Cir. 1997) (stating same). Thus, to survive a motion for summary judgment, the deliberate indifference standard requires a plaintiff to demonstrate that "the official in question subjectively recognized a substantial risk of harm" and "that the official in question subjectively recognized that his actions were 'inappropriate in light of that risk.'" *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (quoting *Rich*, 129 F.3d at 340 n.2).

"To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) (citing *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986)). Absent exceptional circumstances, an inmate's disagreement with medical personnel with respect to a course of treatment is insufficient to state a cognizable constitutional claim, much less to demonstrate deliberate indifference. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (citing *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3d Cir. 1970)).

### B. Claim One

In Claim One, Hobgood contends that on July 30, 2023, Nurse Jarrett denied Hobgood adequate medical care for his hernia, which resulted in "extreme and continuous pain." (ECF No. 31, at 4.) Hobgood, however, fails to demonstrate that Nurse Jarrett was deliberately indifferent to his serious medical needs. First, the Court assumes without deciding that an umbilical hernia could be a serious medical need.[10] Nevertheless, Nurse Jarrett was clearly not deliberately indifferent to that need. Nurse Jarrett listened to Hobgood's concerns; observed the hernia, but saw no bleeding, draining, or odor; cleaned the area; and placed Hobgood on the list to see the doctor at the first available opportunity, which was two days later. Nurse Hobgood also provided Hobgood with a great deal of care. Nurse Hobgood prescribed pain medicine for Hobgood's complaints of pain; provided him with fiber for his complaints of intestinal discomfort and constipation; placed him on a low-sodium diet for his high blood pressure; provided him with education on stress reduction techniques for his high blood pressure; and encouraged Hobgood to increase his water intake, to exercise daily by walking, and to seek further care if his pain continued or symptoms worsened. Nurse Jarrett also provided Hobgood with instructions on good hygiene habits to assist Hobgood with keeping the area around his hernia clean and dry. The record reflects that Nurse Jarrett did not disregard an excessive risk to Hobgood's health or safety necessary to show a constitutional violation. It appears that at most, Hobgood disagreed with the short-term treatment plan prescribed by Nurse Jarrett. Although Hobgood does not identify what additional care he desired from Nurse Jarrett, he nevertheless was simply not entitled to the medical care of his choosing. *Wright*, 766 F.2d at 849 (citations omitted); *Bowring*, 551 F.2d at 48 ("disavow[in]g

---

[10] Nurse Jarrett argues that a reducible hernia is not a serious medical need. (ECF No. 49, at 12–14.) The Court need not decide that here because Nurse Jarrett was in no way deliberately indifferent to Hobgood's hernia in her limited interactions with him.

any attempt [of the Court] to second-guess the propriety or adequacy of a particular course of treatment").

Hobgood's main complaint appears to be that Nurse Jarrett did not properly address his pain. In response to Hobgood's complaints of pain, however, Nurse Jarrett placed Hobgood on the pain protocol and prescribed him acetaminophen. Moreover, Hobgood was seen by the doctor two days later, and he could have discussed an adjustment to his pain medications with the doctor at that time. To the extent that Hobgood complains that for the two days after he was seen by Nurse Jarrett, he still experienced pain, he fails to demonstrate a constitutional violation. "It would be nice if after appropriate medical attention pain would immediately cease, its purpose fulfilled; but life is not so accommodating. Those recovering from even the best treatment can experience pain." *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996). The Eighth Amendment does not require "prison doctors to keep an inmate pain-free in the aftermath of proper medical treatment." *Id.* So long as medical staff respond reasonably to an inmate's complaints of pain, the inmate's Eighth Amendment rights are not violated. *See Brown*, 240 F.3d at 389–90. Because the reasonableness of any such response usually calls for a medical judgment, "[w]hether and how pain associated with medical treatment should be mitigated is for doctors to decide free from judicial interference, except in the most extreme situations." *Snipes*, 95 F.3d at 592; *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) ("[T]he decision whether to provide additional treatment 'is a classic example of a matter for medical judgment.'" (quoting *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (internal quotation marks omitted))). This is clearly not such an extreme circumstance that judicial interference is warranted. Nurse Jarrett was not deliberately indifferent to Hobgood's complaints of pain, as she addressed them with the pain protocol and scheduled him for an appointment with the doctor two days later.

In sum, Hobgood fails to demonstrate that Nurse Jarrett was deliberately indifferent to his hernia and related pain through her limited interactions with Hobgood.[11] Claim One lack merits and will be DISMISSED.[12]

## V. CONCLUSION

Nurse Jarrett's Renewed Motion for Summary Judgment, (ECF No. 48), will be GRANTED. Hobgood's claim and the action will be DISMISSED.

An appropriate Order will accompany this Memorandum Opinion.

Date: 1 May 2025
Richmond, Virginia

/s/
John A. Gibney, Jr.
Senior United States District Judge

---

[11] In his Particularized Complaint where he identifies the defendant, Hobgood vaguely suggests that Nurse Jarrett is the "boss of all N/A at Meherrin" and "she is legally responsible for the operation of the Meherrin River Regional Jail and for the welfare of all of the inmates of that jail." (ECF No. 31, at 3.) To the extent that Hobgood intends to impose liability on Nurse Jarrett solely because of her role as a "boss" at Meherrin, that claim fails. "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Iqbal*, 556 U.S. at 676 (citations omitted). Under the Court's screening obligations, therefore, any claim based on supervisory liability lacks merit.

[12] "[A]s a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there." *Rendelman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009) (citing *Incumaa v. Ozmint*, 507 F.3d 281, 286–87 (4th Cir. 2007)); *see Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991); *Taylor v. Rogers*, 781 F.2d 1047, 1048 n.1 (4th Cir. 1986). Hobgood's request for injunctive relief is moot, because he was released from the custody of Meherrin on October 16, 2023. Moreover, Hobgood's hernia was surgically repaired in February 2024.

13